UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STEVEN SCESA,

    Plaintiff,

vs.

PRINCIPAL LIFE
INSURANCE COMPANY,

    Defendant.
_____/

CASE NO:

## **COMPLAINT FOR DISABILITY BENEFITS**

Plaintiff, STEVEN SCESA, by and through undersigned counsel, hereby sues Defendant, PRINCIPAL LIFE INSURANCE COMPANY, and says:

### I. JURISDICTION AND VENUE

1.    Plaintiff's claims are filed pursuant to 29 U.S.C. § 1001, *et seq*. (ERISA). Venue and jurisdiction are, therefore, proper pursuant to 29 U.S.C. § 1132.

### II. PARTIES

2.    Plaintiff, STEVEN SCESA ("Mr. Scesa"), is a resident of Florida. Defendant, PRINCIPAL LIFE INSURANCE COMPANY (hereinafter "PRINCIPAL" or "Defendant") is a foreign corporation doing business in Florida and can be found in Florida. Defendant is the insurer and claims administrator of the disability policy at issue in this case.

### III. FACTS

**A. THE SUBJECT DISABILITY POLICY**

3. On or about March 1, 2013, PRINCIPAL issued a Group Insurance Policy providing Short-Term and Long-Term Disability benefits to Wellness Solutions, Inc. ("WSI"). SCESA held a 50% ownership in WSI, which ceased doing business in 2015.

4. Wellness Solutions of Tennessee LLC ("WSTN) was a wholly owned subsidiary of WSI. WSTN ceased doing business in 2015.

5. Effective January 1, 2016, WSI was restructured into a dual-entity structure, to wit: Wellness Solutions Geriatrics, PLLC ("WSG") and Geriatric Practice Management ("GPM"). (Corporate Restructuring Diagram, attached hereto as Exhibit "A").

6. Plaintiff did not have an ownership interest in WSG but was employed as its Vice President.

7. GPM was the practice management company for WSG. Plaintiff owned 50% of GPM through Golden Griffon, LLC, his wholly owned company.

8. Due to the restructuring, the Group Policy was amended effective January 1, 2016. The Amended Group Policy identifies WSG as the Group Policyholder and WSTN as the only Participating Unit. However, PRINCIPAL failed to amend the Group Policy to include GPM or Golden Griffon as "Participating Units. " (The Amended Group Policy is attached hereto as Exhibit "B").

9. The Amended Group Policy was not delivered to WSG upon its issuance in 2016 and was not delivered to WSG until requested in August 2022.

10. Rather, PRINCIPAL issued to WSG a "Group Booklet – Certificate for Members of WSG." ("Certificate") (Attached hereto as Exhibit "C"). Unlike the Group Policy, such

Certificate does not identify the "Participating Units." Therefore, neither WSG nor SCESA were aware that GPM and Golden Griffon were not included as Participating Units.

### B. SCESA's TRAUMATIC BRAIN INJURY AND DISABILITY CLAIM

11. On or about September 25, 2016, SCESA sustained severe head trauma and related injuries when struck by a motor vehicle while riding his bicycle.

12. SCESA was diagnosed with a Traumatic Brain Injury ("TBI"), along with chronic post-traumatic headaches, post-concussive syndrome, depression, anxiety, memory loss, dizziness, vertigo, and a Neurocognitive Disorder.

13. While SCESA attempted to return to work after the bicycle accident, he found that he was unable to continue due to his accident-related injuries. SCESA was forced to discontinue working completely on or about November 1, 2018, due to his disabling accident-related injuries.

14. On or about November 29, 2018, in accordance with the procedures set forth by the Certificate, SCESA notified Defendant that he was disabled, and that his last day worked was November 1, 2018.

15. The Certificate defines disability as:

> *A member will be considered Disabled if, solely and directly because of sickness, injury, or pregnancy:*
>
> a. *The Member cannot perform the majority of the Substantial and Material Duties of his or her Own Occupation.*
>
> b. *The Member is performing the duties of his or her Own Occupation on a Modified Basis or any occupation and is unable to earn more than 80% of his or her Indexed Pre-disability Earnings.*

16. By letter dated January 17, 2019, PRINCIPAL advised SCESA that it had completed its review of his Short-Term Disability ("STD") and Long-Term Disability ("LTD") claims and determined that he was not eligible for any benefits, asserting that they had not

received medical information to support that SCESA was unable to work after September 25, 2016. (Exhibit "D").

17. Rather than appeal PRINCIPAL's denial, SCESA resubmitted his STD and LTD claims to PRINCIPAL in August 2021.

18. By letter dated October 20, 2021, PRINCIPAL again denied SCESA's claim, asserting that he does not meet the policy's definition of disability. PRINCIPAL relied on a records review by a psychologist, Dr. Hertza, who concluded that, "There are no psychological conditions that are functionally impairing." (Exhibit "E").

19. By letter dated February 23, 2021, SCESA appealed PRINICIPAL's October 2021 claim denial and furnished PRINICIPAL with affidavits of three of his treating physicians, all of whom attested to SCESA's total disability. (Exhibit "F").

20. On May 2, 2022, at PRINCIPAL's request, SCESA attended a Neuropsychological IME with Alejandro Arias.

21. By letter dated June 7, 2022, PRINCIPAL acknowledged that SCESA is totally disabled and approved SCESA's claim as of September 25, 2016. PRINCIPAL paid SCESA STD benefits from October 9, 2016, through March 25, 2017. (Exhibit "G").

22. PRINCIPAL also approved SCESA's LTD claim as of May 29, 2018, explaining that LTD benefits cannot be paid more than six (6) months prior to the date of the claim being reported.

23. Despite having previously relied on Dr. Hertza's opinion to conclude that SCESA had no psychological impairment, PRINCIPAL now determined that SCESA's

disabling condition is not organic but is rather the result of a mental health condition, relying on Dr. Arias' conclusions.

24. PRINCIPAL's decision was motivated by its attempt to improperly limit SCESA's benefits to twenty-four (24) months, the maximum period of benefits for disability caused by a mental or nervous disorder, as follows:

> Your period of Disability will be considered due to alcohol, drug or chemical abuse, dependency, or addiction, or a Menial Health Condition if;
>
> a. you are limited by one or more of the stated conditions; and
>
> **b. you do not have other conditions which, in the absence of the above stated conditions, would continue to exist, limit activities and lead Us to conclude that you are Disabled for another condition in and of itself.**
>
> When Disability results from alcohol, drug or chemical abuse, dependency, or addiction, or a Mental Health Condition, the maximum number of Benefits Payable for all such periods of Disability is limited to 24 months. This is not a separate maximum for each such condition, or for each period of Disability, but a combined lifetime maximum for all periods of Disability and for all of these conditions, either separate or combined.
>
> (Emphasis added).

25. Therefore, PRINCIPAL paid the 24-month maximum LTD benefits (from May 29, 2018, to May 28, 2020), and advised SCESA that to receive continuing benefits he needed to submit documentation that supports his disabling condition is physical and not subject to the Certificate's mental health limitation.

26. By letter dated July 14, 2022, SCESA appealed PRINCIPAL's decision to limit his benefits to twenty-four (24) months, and furnished PRINCIPAL with additional affidavits from his treating physicians and other documentation demonstrating that SCESA's disabling condition is physical rather than mental. (Attached hereto as Exhibit "H"). SCESA explained:

- The genesis of Mr. Scesa's disabling condition was **head trauma**, resulting from being struck by a motor vehicle while on a bicycle;

- His head trauma was associated with a loss of consciousness;
- Mr. Scesa's treating physicians all diagnosed him with a mild Traumatic Brain Injury ("TBI"); Post-concussive Syndrome and Neurocognitive Disorder;
- The affidavits of Drs. Hubbard and Zebel both attest to the fact that Mr. Scesa's condition is organic in nature;
- Several physicians who examined Mr. Scesa regarding his application for Social Security Disability benefits agree that Mr. Scesa's condition is organic in nature;
- The Social Security Administration's Findings of Fact include mild TBI and Neurocognitive Disorder as medically determinable impairments and that he is NOT impaired by a mental health condition.

27. SCESA further contended that the Certificate provides that SCESA's disability will be considered due to a mental health condition **only** if he does not have other conditions which, in the absence of the mental health condition, would continue to exist, limit activities and lead to a conclusion that he is disabled from another condition in and of itself.

28. By letter dated September 27, 2022, PRINCIPAL denied SCESA's appeal, asserting that, "the information we reviewed supports Mr. Scesa's disabling condition is a result of a mental health condition and subject to a 24-month payment limitation." (Attached hereto as Exhibit "I").

29. PRINCIPAL reached this conclusion despite the opinion of Dr. Getz who, after conducting a neuropsychological records review for PRINCIPAL, determined that SCESA does not have an impairing condition due to a cognitive or psychological condition.

30. The denial SCESA's disability claim for benefits beyond May 28, 2020, is a breach of the terms of the Certificate, and the decision was wrong, arbitrary, and capricious.

31. The denial of SCESA's disability claim for benefits breached the fiduciary duties owed to Mr. Scesa under ERISA. Defendant further failed to discharge its duties in respect

to discretionary claims processing solely in the interests of SCESA as a participant of the disability policy.

32. SCESA exhausted his appeals under ERISA, or any such requirement was waived, excused and/or futile.

## IV. COUNT I: ENTITLEMENT TO LONG-TERM DISABILITY BENEFITS BEYOND MAY 28, 2020

Plaintiff incorporates the allegations contained in Paragraphs 1 through 32 as if fully stated herein and says further that:

33. Plaintiff is entitled to certain benefits of the policy consisting of past long-term disability benefits including prejudgment interest, retroactive to the day benefits were denied pursuant to 29 U.S.C. §1132(a)(1)(B).

34. Plaintiff is entitled to the benefits identified herein because:

   a. The benefits are permitted benefits under the policy;
   b. Plaintiff has satisfied all conditions to be eligible to receive the benefits;
   c. Plaintiff has not waived or otherwise relinquished him entitlements to the benefits;

35. Defendant has refused to pay the benefits sought by Mr. Scesa, ignoring the medical records and clear opinions of both his and PRINCIPAL's physicians.

## V. COUNT II – AMOUNT OF CORRECT MONTHLY BENEFIT

Plaintiff incorporates the allegations contained in Paragraphs 1 through 32 as if fully stated herein and says further that:

36. The Certificate provides that SCESA is entitled to a monthly benefit equal to 60% of his "Pre-disability Earnings", not to exceed a maximum monthly benefit of $9,000.00.

37. Pre-disability Earnings is defined as "your Monthly Earnings in effect prior to the date Disability begins. "

38. Monthly Earnings is defined as:

For Members with no ownership interest in the business entity of the Policyholder:

On any date, your basic monthly (or monthly equivalent) wage then in force, as established by the Policyholder. Basic wage does not include bonuses, stock options, tips, differential pay, housing and/or car allowance, or overtime pay. Basic wage does include commissions and any deferred earnings under a qualified deferred compensation plan, such as contributions to Internal Revenue Code Section 401(k), 403(b), or 457 deferred compensation arrangements and any amount of voluntary earnings reduction under a qualified Section 125 Cafeteria Plan or Health Savings Account.

Commissions will be averaged for:

a. the one calendar year period prior to the date Disability begins, if you have been employed for at least one calendar year(s); or

b. the completed months of employment prior to the date Disability begins, if you have been employed for less than one calendar year(s).

For Members with a direct ownership interest in the business entity of the Policyholder, such as, but not limited to, an owner of a sole proprietorship, a partner in a partnership, a shareholder of a corporation or subchapter S-corporation, or a member of a limited liability company or limited liability partnership. Monthly Earnings on any date are based on an average of the following earnings as reported for Federal Income Tax purposes for the last two calendar year(s), assuming the owner meets all eligibility requirements:

a. your share (based on ownership or contractual agreement) of the gross revenue or income earned by the Policyholder, including income earned by you and others under your supervision or direction; less

b. your share of expenses (based on ownership or contractual agreement) that is deductible for Federal Income Tax purposes, and does not exceed the expenses before Disability began to the extent that your share of letter b. does not exceed your share of letter a.; plus

c. the salary, benefits, and other forms of compensation which arc payable to you, and any contributions to a pension or profit-sharing plan made on your behalf by the Policyholder.

39. When PRINCIPAL paid SCESA the LTD benefits for the twenty-four (24) month period referred to in paragraph 25 above, PRINCIPAL utilized a September 25, 2016 date of disability to determine the amount of the monthly benefits owed, despite having actual knowledge that SCESA returned to work for a period of time following the September 25, 2016 accident and did not cease working completely until November 1, 2018.

40. PRINCIPAL utilized an incorrect date of disability to reduce SCESA's monthly benefits arbitrarily and capriciously from the $9,000 maximum to just $2,006.85. (Exhibit "J").

41. By letter dated August 1, 2022, SCESA appealed PRINCIPAL's calculation of the monthly benefit. (Exhibit "K").

42. PRINCIPAL denied SCESA's appeal.

## VI. COUNT III: ATTORNEY'S FEES

Plaintiff incorporates the allegations contained in Paragraphs 1 through 42 as if fully stated herein and says further that:

43. To the extent that Defendant violated any provisions of Subchapter I of Title 29, Chapter 18 of the United States Code, Plaintiff is entitled to reasonable attorney's fees and costs of this action pursuant to 29 U.S.C. §1132(g)(1).

## VII. RELIEF REQUESTED

Plaintiff incorporates the allegations contained in Paragraph 1 through 43 as if fully stated herein and says further that:

44. As a result of the acts and/or omissions of Defendant as alleged herein, Defendant owes Plaintiff unpaid long-term disability benefits, plus interest.

45. Defendant is also liable for Plaintiff's attorney's fees and the costs of litigation in an amount to be proven at trial.

46. Defendant is also liable to place Plaintiff in the position he would have enjoyed under the policy had he not been wrongfully denied benefits by Defendant.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, STEVEN SCESA, prays for a judgment against Defendant for the relief as plead herein and for such other relief as this Honorable Court deems just and proper.

## VIII.  JURY DEMAND

The Plaintiff requests trial by jury.

Dated:  October 27, 2022.

Respectfully submitted,

BENRUBI LAW, P. A.
6501 Congress Avenue, Suite 118
Boca Raton, FL  33487
Phone:  (561) 910-8650
Email: *RBenrubi@benrubilaw.com*
Secondary: *cgarcia@benrubilaw.com*

*Counsel for Plaintiff*

By: /s/ Richard M. Benrubi
    RICHARD M. BENRUBI, ESQ.
    Florida Bar No.: 796573